IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| D.C., INC. d/b/a DIRT CHEAP CIGARETTES AND BEER, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | Case No. 06-4033-CV-C-NKL |
| STATE OF MISSOURI, ex rel. KAREN K. MITCHELL, Director of Revenue, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

**O R D E R**

     Plaintiff D.C., Inc., brings this action against Defendants Karen K. Mitchell, Director

of the Missouri Department of Revenue ("DOR"),[1] Greg Barnes, an assistant Missouri

attorney general ("Barnes"), Oliver Dixon, Administrator of the Criminal Investigation

Bureau of the Department of Revenue, and several special agents of DOR.  Plaintiff alleges

that the Defendants violated its rights under the Fourth, Fifth, and Fourteenth Amendments

to the United States Constitution when Defendants seized cigarettes from Plaintiff's stores

on three occasions in February of 2006 and February of 2007.  Plaintiff's Second Amended

Complaint seeks a declaratory judgment against all Defendants in their official capacities

under Count I, and damages against all Defendants except Defendant Mitchell under Count

---

     [1]Pursuant to Federal Rule of Civil Procedure 25(d), Karen Mitchell, Missouri's current
Director of DOR, is substituted for Omar Davis as a defendant in this case.

1

II.[2]  Pending before the Court are Defendants' Motion for Summary Judgment [Doc. # 70] and Plaintiff's Motion for Partial Summary Judgment [Doc. # 71].  Defendants move for summary judgment with respect to all of Plaintiff's remaining claims, and Plaintiff moves for summary judgment on its claims for declaratory relief in Count I and for damages in the amount of the retail value of cigarettes seized from its stores in Count II.  For the reasons stated herein, Defendants' motion is granted and Plaintiff's motion is denied.

I.      **Background and Facts**

        A.      **Parties**

        Defendants Greg Barnes ("Barnes"), Oliver Dixon ("Dixon"), Karl Kenkel ("Kenkel"), Margaret Marquard ("Marquard"), Robert John ("John"), Michael Nelson ("Nelson"), and Kerry Placeway ("Placeway") are sued in their individual and official capacities for actions taken under color of Missouri law.  During the time period relevant to this case, Defendants Kenkel, Marquard, John, Nelson, and Placeway were special agents of DOR.  Defendant Kenkel was, at the time of the seizures, the special agent in charge of DOR's St. Louis office, and Defendants Marquard, John, Nelson, and Placeway reported to him.  Defendant Kenkel in turn reported to Defendant Oliver Dixon, the administrator in charge of DOR's Criminal Investigation Bureau.  Defendant Barnes is an assistant attorney general of the state of Missouri.  Defendant Karen K. Mitchell is sued only in her official

_____

[2]The Court granted judgment on the pleadings to Defendants with respect to Plaintiff's claim for injunctive relief in Count I in its Order of April 1, 2009 [Doc. # 69].

2

capacity as the Director of DOR. Plaintiff D.C., Inc. ("D.C."), is a Missouri corporation

doing business as "Dirt Cheap Cigarettes and Beer."

### B.    Relevant Missouri Statutes

Sections 149.203.2, 149.055, and 196.1003 of the Revised Statutes of Missouri

provide, in relevant part:

149.203. Revocation or suspension of wholesaler licenses
. . . .
2. Cigarettes that are acquired, held, owned, possessed, transported in, imported into, or sold or distributed in this state in violation of sections 149.200 to 149.215 or sections 196.1000 to 196.1003, RSMo, shall be deemed contraband pursuant to section 149.055 and are subject to seizure and forfeiture as provided therein. Any cigarettes shall be deemed contraband whether the violation of sections 149.200 to 149.215 is knowing or otherwise.
. . . .

149.055. Unstamped cigarettes seized, when – personal property used incident to such attempt to avoid tax to be forfeited, procedure

1. All unstamped cigarettes upon which taxes are imposed by this chapter . . . may be seized by the Director or his duly authorized agents, or any peace officer within the state, and the same shall be forfeited to the state of Missouri, and a proper proceeding filed in a court of competent jurisdiction in the county of seizure, to maintain the seizure and prosecute the forfeiture as provided in this section.
. . . .

196.1003. Requirements
Any tobacco product manufacturer selling cigarettes to consumers within the State (whether directly or through a distributor, retailer or similar intermediary or intermediaries) after the date of enactment of this Act shall do one of the following:

(a) become a participating manufacturer (as that term is defined in section II(jj) of the Master Settlement Agreement) and generally perform its financial obligations under the Master Settlement Agreement; or

3

(b) (1) place into a qualified escrow fund by April 15 of the year following the year in question the following amounts . . .

. . . .

(3) Each tobacco product manufacturer that elects to place funds into escrow pursuant to this subsection shall annually certify to the Attorney General that it is in compliance with this subsection. The Attorney General may bring a civil action on behalf of the State against any tobacco product manufacturer that fails to place into escrow the funds required under this section. Any tobacco product manufacturer that fails in any year to place into escrow the funds required under this section shall –

(A) be required within 15 days to place such funds into escrow as shall bring it into compliance with this section. The court, upon a finding of a violation of this subsection, may impose a civil penalty to be paid to the State's general revenue fund . . . ;

(B) in the case of a knowing violation, be required within 15 days to place such funds into escrow as shall bring it into compliance with this section. The court, upon a finding of a knowing violation of this subsection, may impose a civil penalty to be paid to the State's general revenue fund . . .; and

(C) in the case of a second knowing violation, be prohibited from selling cigarettes to consumers within the State (whether directly or through a distributor, retailer or similar intermediary) for a period not to exceed 2 years.

Each failure to make an annual deposit required under this section shall constitute a separate violation. Any tobacco product manufacturer that violates the provisions of this section shall pay the State's cost and attorney's fees incurred during a successful prosecution under this section.

## C.    Background

In 1998 the State of Missouri, along with several other states, entered into a Master

Settlement Agreement ("MSA") with certain tobacco product manufacturers. The agreement

settled the states' claims against the tobacco defendants in exchange for, among other

conditions, large annual payments from the tobacco defendants totaling $6.7 billion over a

4

25 year period. *See State ex rel Nixon v. American Tobacco Co.*, 34 S.W.3d 122, 126 (Mo. banc 2000). Plaintiff's twelve Missouri retail stores sell, among other things, cigarettes manufactured by companies who do not participate in the MSA. Missouri statutes impose certain requirements on cigarette manufacturers who choose not to participate in the MSA. One of these requirements is that the non-participating cigarette manufacturers make payments into a qualified escrow fund. Mo. Rev. Stat. §§ 196.1000-1003. If a non-participating manufacturer fails to make these escrow payments, the Missouri Attorney General may bring a civil action on behalf of the State, and penalties may be imposed by a court. Mo. Rev. Stat. § 196.1003(b)(3).

DOR officials report the number of cigarettes sold for the prior calendar year to the Missouri Attorney General's office, through Form 4916s that are submitted to DOR by wholesalers. The Missouri Attorney General's office reviews escrow deposit forms and payments submitted by April 15 of each year pursuant to Section 196.1003 of the Revised Statutes of Missouri. When Section 149.203.2 of the Revised Statutes of Missouri was first enacted, it was the interpretation of the Missouri Attorney General's office and DOR that any cigarettes manufactured by non-participating manufacturers who were in violation of their escrow requirements were contraband and subject to seizure. Based upon this understanding of the law and upon a comparison of the escrow deposits and the information on the 4916 forms, Defendant Barnes determined that particular manufacturers were in violation of

5

escrow requirements under Section 196.1003 and that the cigarettes they manufactured were therefore subject to seizure.[3]

On December 31, 2002, the Missouri Attorney General's office and the DOR jointly sent a letter to notify wholesalers, distributors, and retailers of the provisions of Section 149.203.2. The letter included a "contraband list." Starting in the middle of 2004, the Missouri Attorney General's office and DOR stopped sending out contraband lists. Instead, lists of manufacturers and brands that had complied with the escrow requirements, were published on a state website.[4]

On April 4, 2003, Defendant Barnes, an assistant attorney general of the State of Missouri, along with Patricia Gifford, a DOR official, sent a letter informing Plaintiff that certain cigarettes on a contraband list were contraband under Sections 149.203 and 149.055 of the Revised Statutes of Missouri, because their manufacturers had not complied with the state escrow tax requirements set out in Sections 196.1000-1003. This letter stated that the

_____

[3]Plaintiff correctly notes that the Missouri Court of Appeals has confirmed that Defendant Barnes in fact did not have the authority to "determine" that particular cigarette manufacturers were in violation of their escrow requirements and that their cigarettes were contraband subject to seizure. However, while Barnes may have lacked the statutory authority to conclusively determine that particular cigarette manufacturers were in violation of the escrow requirements or that their cigarettes were contraband, Plaintiff has not disputed that, based upon the Missouri Attorney General's office and DOR's understanding of Section 149.203.2, Defendant Barnes "determined" that particular manufacturers were in violation of their escrow requirements and that their cigarettes were therefore contraband.

[4]Plaintiff again disputes that the Missouri Attorney General's office had the authority to make determinations about which manufacturers had complied with escrow requirements, but does not dispute that such a list was published on a state website beginning in mid-2004, or that any of the other actions described did not occur.

6

Plaintiff could not "sell, acquire, own, possess, transport, import, or in any way hold" the allegedly contraband cigarettes, and warned that the cigarettes were subject to seizure by state or local officials.

On October 12, 2005, Barnes sent Plaintiff a follow-up letter. This letter stated that Kingsley brand cigarettes were contraband and subject to seizure and forfeiture. Plaintiff removed Kingsley cigarettes from its stores and requested that Barnes provide the basis for his determination that Kingsley cigarettes were contraband. Barnes did not respond to Plaintiff's request.

Prior to the cigarette seizures at issue in this case – in February of 2006 and February 2007 – DOR interpreted Missouri law as permitting the seizure of cigarettes whose manufacturers had not complied with escrow requirements even though the DOR had not obtained a court order to that effect. Defendant Dixon, the administrator of DOR's Criminal Investigation Bureau, ordered the compliance checks of the stores and the seizures in 2006 and 2007. Defendant Dixon believed the cigarettes were contraband based upon the "contraband list."[5]

### D. The Seizures

#### 1. February 3, 2006 Seizure

---

[5]Plaintiff has provided no actual evidence that Dixon did not believe the cigarettes to be contraband. The fact that they were eventually ruled by the Missouri Court of Appeals to not be contraband absent a prior court order, does not logically prove that Dixon did not believe them to be contraband.

7

On February 3, 2006, Defendant Barnes called Keith Gast with DOR, and informed him that Barnes had been in Plaintiff's Manchester Road store in St. Louis County and had seen what he believed were contraband cigarettes.[6]  Gast forwarded this information to Defendant Dixon, who ordered Defendants Kenkel and Marquard to conduct a compliance check of the store and to seize contraband cigarettes, specifically including all Infinity, Parker, and Euro brand cigarettes.  Defendants Kenkel and Marquard entered Plaintiff's retail store on Manchester Road in St. Louis County.  The special agents seized three brands of cigarettes - Infinity, Parker, and Euro brand cigarettes.  The agents told Plaintiff's store manager that the cigarettes were contraband under Missouri law because the cigarettes' non-participating manufacturers had failed to make sufficient payments into qualified escrow accounts.  Defendant Kenkel believed at the time that the cigarettes were contraband because Defendant Dixon had informed him that certain cigarettes were considered contraband by the Missouri Attorney General's office.[7]  The value of the cigarettes seized on February 3, 2006 was $2,269.08.

---

[6]In their statement of undisputed material facts, Defendants stated that Defendant Barnes told Gast that he saw "contraband cigarettes."  Plaintiff denied "that it was possible for Defendant Barnes to determine that cigarettes were contraband absent a court order" but did not dispute that Barnes believed the cigarettes to be contraband.

[7]In their statement of undisputed material facts, Defendants stated that "Defendant Kenkel *knew* . . . that the cigarettes were contraband[.]" Plaintiff disputes that it was possible for Kenkel to "know" that the cigarettes were contraband because the cigarettes were not, in fact, contraband, as no court order holding the cigarettes' manufacturer in violation of its escrow payment requirements and prohibiting the sale of the cigarettes in Missouri had been entered. However, Plaintiff does not appear to dispute that Kenkel believed the cigarettes to be contraband at the time of the February 2006 seizure.

Defendant Kenkel did not know or speak to Defendant Barnes prior to the February 3, 2006 seizure. Kenkel learned who Barnes was when Defendant Dixon informed him over the phone that day. Plaintiff's president, Frederick Teutenberg, wrote a statement at the bottom of an inventory sheet that Defendant Barnes had authorized and ordered the seizure. Defendant Kenkel crossed the statement out. Plaintiff's president was informed that if he had additional questions about the authority for the seizure, he could contact Defendants Dixon and Barnes. The parties appear to dispute whether Defendant Barnes, through his conduct described above and in creating a "contraband list," had "authorized" the seizure, but do not dispute that the agents received their instructions directly from Dixon and not Barnes. It is undisputed that Barnes, in his capacity as assistant attorney general for the state of Missouri, made determinations as to whether cigarette manufacturers were in compliance with Sections 196.1000 to 196.1003 of the Revised Statutes of Missouri.

### 2.    February 21, 2007 Seizures

On February 21, 2007, DOR agents, at the direction of Defendant Dixon, conducted compliance checks of tobacco retailers in the St. Louis area. Defendants Nelson and Placeway, special agents of the DOR, entered Plaintiff's stores located at Hampton Avenue in St. Louis, Missouri, and Gravois Road in St. Louis County, Missouri. The agents seized Way brand cigarettes located at Plaintiff's Hampton Avenue store and Way and Infinity brand cigarettes located at Plaintiff's Gravois Road store. Defendant Dixon had instructed

9

Placeway and Nelson to seize all Way and Infinity brand cigarettes.[8] These cigarettes were to be seized because their manufacturer had failed to make the required escrow payments. The cigarettes seized from the Hampton store were valued at $4,362.19, and the cigarettes seized from the Gravois store were valued at $4,463.36.

### 3. February 22, 2007 Seizures

On February 22, 2007, Defendants Kenkel and John entered Plaintiff's Manchester Road store in St. Louis County, Missouri, and seized all Way brand cigarettes. Defendant Kenkel directed this compliance check. Defendant Dixon directed the agents to seize these cigarettes because they were on a contraband list. During this seizure, counsel for D.C., Elizabeth T. Ferrick, told Defendant Kenkel that other counsel for D.C. was at a hearing in St. Louis County Circuit Court to obtain a temporary restraining order to prevent the seizure, and asked the agents to wait to see if a temporary restraining order would be issued. Defendant Kenkel checked with Defendant Dixon before seizing the cigarettes, and was instructed to make the seizure. The value of the cigarettes seized from the Manchester store on February 22, 2007, was $1,172.16.

Later the same day, Defendants Marquard and Placeway, at the direction of Defendant Kenkel, conducted compliance checks of other stores, including Plaintiff's West Alton store. Defendants Marquard and Placeway entered Plaintiff's West Alton store, identified

---

[8]Plaintiff denies that it was legally possible for Defendant Nelson to receive an instruction to look for "contraband cigarettes" because there was no court order in place on February 21, 2007, finding the manufacturer of Way and Infinity brand cigarettes in violation of its escrow requirements. However, Plaintiff does not dispute that Nelson was given this instruction, or that at the time Nelson believed these cigarettes were contraband.

10

themselves to the store personnel and conducted a check. They found cigarettes they believed were contraband based on the direction of Defendant Kenkel.[9] Defendant Dixon had instructed the agents to seize all Way and Infinity brand cigarettes on the premises.

Plaintiff obtained a temporary restraining order from a state court before the agents had completed the seizure of cigarettes at the West Alton store. Counsel for Plaintiff requested that counsel for Defendants, Assistant Attorney General Joan Gummels, who was present at the hearing for the temporary restraining order, contact her client regarding the issuance of the temporary restraining order. Assistant Attorney General Gummels called her supervisor, but did not call the DOR. Plaintiff's counsel, Elizabeth Ferrick, went to the West Alton store and informed the agents that a temporary restraining order had been issued preventing the agents' seizure of Plaintiff's cigarettes, and that the Sheriff's office had been called. Defendants Kenkel and Dixon advised the agents that unless they had actually seen a court order, the seizures should continue. Kenkel Dep. 123:2-22. Defendants Marquard and Placeway waited at the store for the deputy. After the deputy arrived, a copy of the temporary restraining order was faxed to the West Alton store. DOR had not notified its agents of the existence of this temporary restraining order before this point, and had not

---

[9]In their statement of undisputed material facts, Defendants stated that Marquard and Placeway "found contraband cigarettes," and that Marquard "knew that the cigarettes were contraband based on the direction of Defendant Kenkel." Def.'s Sugg. in Supp. at 17-18. Plaintiffs dispute that the cigarettes were actually contraband, and that it was impossible for Marquard to "know" that these non-contraband cigarettes were contraband. Pl.'s Sugg. in Opp. at 9-10. Plaintiffs do not dispute that the agents found what they believed to be contraband cigarettes, or that their belief that the cigarettes were contraband was based upon information given to them by Defendant Kenkel.

trained its agents concerning the requirements of the temporary restraining order. The deputy showed the fax of the temporary restraining order to the agents, and instructed Elizabeth Ferrick to fax a copy to Defendant Dixon. The agents had already removed some cigarettes from the West Alton store and had placed those cigarettes into a DOR vehicle. The deputy ordered the agents to return those cigarettes to the store, and the agents did so. The agents left the store without any cigarettes. On February 22, 2007, Plaintiff sent a letter to Defendants' counsel requesting the return of all the cigarettes seized on February 21 and 22, 2007. Defendants refused to return the cigarettes to Plaintiff for retail sale.

It is undisputed that Defendants were acting under color of state law when they seized Plaintiff's property as contraband. However, Defendants did not have court orders, judgments or other judicial determinations authorizing them to seize the cigarettes they seized from Plaintiff's stores on February 3, 2006, February 21, 2007, or February 22, 2007. At the time of these seizures, no court had found the manufacturers of the seized brands to be in violation of Section 196.1003 of the Revised Statutes of Missouri, and no court had entered an order prohibiting the sale of those cigarette brands within the State of Missouri pursuant to Section 196.1003(b)(3). DOR special agents were not trained by DOR regarding the requirements of Sections 196.1000-196.1003 of the Revised Statutes of Missouri. Aside from Defendant Barnes's determination as to cigarette manufacturers' compliance with the relevant statutes, Defendants never verified whether a cigarette manufacturer was in compliance with the requirements of Sections 196.1000 to 196.1003 of the Revised Statutes of Missouri prior to seizing cigarettes from Plaintiff's stores; Defendants instead relied either

12

upon a "contraband list" or upon their supervisor's instructions regarding whether a particular manufacturer was purportedly in violation of Missouri's escrow requirements.

### E.    Federal and State Litigation

After the February 3, 2006 seizures, Plaintiff filed its initial complaint in this Court against the Director of Revenue and Assistant Attorney General Barnes on February 21, 2006 [Doc. # 1]. Subsequently, on March 16, 2006, DOR filed a state court forfeiture action against Plaintiff in the Circuit Court of St. Louis County, Missouri, captioned *State of Missouri ex rel. Trish Vincent, Director of Revenue v. D.C., Inc.*, Case No. 06CC-001198. This petition for forfeiture arose out of the February 3, 2006 seizure and alleged that seizure was authorized pursuant to Section 149.203.2 of the Revised Statutes of Missouri. Mo. Rev. Stat. § 149.203.2. On August 30, 2006, this Court abstained from exercising jurisdiction until the Missouri state courts addressed the disputed state law issues on the theory that a Constitutional issue might be avoided if the Missouri court found the law to be as interpreted by DOR. [Doc. # 25].

Plaintiff Dirt Cheap filed a counterclaim in the state court action, seeking a declaration that Defendants' February 3, 2006 seizure was not authorized by Section 149.203.2 or any other Missouri law and that a non participating manufacturer cannot be deemed in violation of Section 196.1003 unless a judicial determination has been made that the manufacturer has failed to comply with the requirements of that section. The state court entered a preliminary injunction enjoining Defendants from seizing cigarettes "acquired, held, owned, or

13

possessed" by Plaintiff based upon a manufacturer's alleged violation of its escrow requirements "unless (1) a court of competent jurisdiction enter[ed] an order under § 196.1003(b)(3)(c) RSMo prohibiting the sale of the Tobacco Product Manufacturer's cigarettes in the State; and (2) the person from whom the cigarettes are seized ha[d] knowledge of the court's order prohibiting the sale of cigarettes in the State of Missouri." *See* Ex. S to Pl.'s Sugg. in Supp.

After the February 21-22, 2007 seizures, the Defendant Director of Revenue filed three additional petitions for forfeiture against Plaintiff in state court on March 1 and 2, 2007. These lawsuits sought forfeiture of the seized cigarettes, alleged that Plaintiff had violated the Missouri Merchandising Practices Act, and sought civil penalties, court costs, investigatory costs, and attorneys' fees.

On May 11, 2007, the state trial court held a hearing on Plaintiff's motion for a permanent injunction, at which the parties presented testimony, evidence and argument. On December 13, 2007, the trial court found for the Defendants, and issued a judgment finding that the February 2006 seizure was authorized by Missouri law. The state trial court rejected a construction of Sections 149.203.2 and 196.1003 which would require a court order before seizing the manufacturer's cigarettes as contraband:

> Dirt Cheap construes section 196.1003(b)(3) in conjunction with section 149.203.2 to mean that cigarettes only become contraband in a retailer's possession after a judicial determination of two knowing violations prohibiting their sale per section 196.1003(b)(3)(C). The Court rejects this construction. There is no requirement in either statute that the State must secure a court order prohibiting their sale in Missouri prior to seizure. By its plain language, section 196.1003(b)(3) pertains solely to the remedies the State

14

has against "*tobacco product manufacturers* selling cigarettes to consumers within the State...," if that manufacturer does not comply with the requirements to pay escrow and file a certificate of compliance. The remedy of section 196.1003(b)(3)(C) prohibits a *manufacturer* from selling its product in the State but does not address cigarettes "acquired, held, owned [or] possessed" by a *retailer*, as contemplated in section 149.203.2

Furthermore, the legislature was aware of section 196.1003 at the time it enacted section 149.203 to aid in its enforcement. . . . The only construction of section 149.203 that gives meaning to the words of the statute is that cigarettes made by any tobacco manufacturer who fails to comply with any provision of sections 196.1000 to 196.1003 are contraband, subject to seizure from any retailer who acquires, holds or possesses them. The seizure must be pursuant to the procedure set out in section 149.055, including a post-seizure forfeiture hearing in the county in which the seizure took place.

Ex. W to Pl.'s Sugg. in Supp. The state trial court therefore awarded summary judgment to the Director of Revenue.

Plaintiff appealed, and on July 22, 2008, the Missouri Court of Appeals reversed, finding that the State lacked the authority to seize cigarettes as contraband until a court determined that the cigarettes' manufacturer had violated Section 196.1003 of the Revised Statutes of Missouri by failing to comply with its escrow tax requirements. *See State ex rel. Vincent v. D.C., Inc.*, 265 S.W.3d 303 (Mo. Ct. App. 2008). The Court of Appeals noted that under Missouri law, "forfeiture statutes are strictly construed against the State, and every word, clause sentence, and provision of the statutes are presumed to have been intended by the legislature to have effect and be operative." *Id.* at 306. It noted that Section 149.203.2 allowed for the seizure of cigarettes acquired, held, owned, possessed, transported in, imported into, or sold or distributed "in violation of" Sections 196.1000 to 196.1003, but held that "the statute does not give the authority to the Director to act *upon its belief* that a

15

violation of the statute has occurred." *Id.* at 307 (emphasis in original). The Court of Appeals contrasted Section 149.203.2 with a similar statute in Maine which provided that "'Contraband tobacco products may be seized by a law enforcement officer or duly authorized agent of the assessor *who has **probable cause to believe** that the tobacco products are untaxed. . . .,*'" noting the disputed Missouri statute did not contain such language. *Id.* (quoting Me. Rev. Stat. Ann. tit. 36, § 4404-C.3) (emphasis in original). Discussing Section 196.1003, the Court of Appeals found that "[t]here [wa]s no language in the statute supporting a conclusion that the Director has the power to unilaterally impose the penalty of seizure prior to a judicial determination." *Id.* at 308. The Court of Appeals held that, "based upon [its] construction and harmonization of Sections 196.1000-1003 and 149.203" the Director of Revenue was "without authority to seize the cigarettes at issue from [Plaintiff] prior to a court determination of the cigarettes' manufacturer's unremedied violation of the escrow requirements set forth in Section 196.1003(b)(1)." *Id.*

The Director of Revenue filed a motion for rehearing en banc, or, in the alternative, application for transfer to the Supreme Court of Missouri, with the Missouri Court of Appeals. The Missouri Court of Appeals denied this motion on September 15, 2008. The Supreme Court of Missouri denied the Director of Revenue's application for transfer on October 28, 2008. The Missouri Court of Appeals issued its mandate and the state trial court entered a final judgment and order in Plaintiff's favor on November 26, 2008, "finding that 'the Director [wa]s without authority to seize the cigarettes at issue . . . prior to a court

16

determination of the cigarettes' manufacturer's unremedied violation of the escrow requirements set forth in Section 196.1003(b)(1)."

Defendants continued to conduct compliance checks after July 2008 relying upon "contraband lists." Defendants point out that compliance checks include looking for unstamped cigarettes as well as looking for "contraband" cigarettes.[10] Kenkel Dep. 29-31.

As discussed above, the Missouri Attorney General's office issued a "statement concerning tobacco product manufacturers" on its website prior to the filing of this lawsuit in February of 2006. The website states that cigarettes in violation of the requirements of Sections 196.1000 to 196.1003 of the Revised Statutes of Missouri "shall be deemed contraband and are subject to seizure" by DOR. The website includes a list of "approved manufacturers" and is maintained by Defendant Barnes. As of at least April 16, 2009, the Missouri Attorney General's Office has not changed this practice, and the same statements still appear on its website. *See* Declaration of Elizabeth Ferrick, Ex. 1 (screen shot of Missouri Attorney General's website dated April 16, 2009), attached as Exhibit J to Pl.'s

---

[10] Plaintiff alleges in its Statement of Uncontroverted Material Facts that "Defendants have conducted additional compliance checks since the Missouri Court of Appeals issued its order on September 15, 2008. During these inspections, Defendants relied on the "contraband list" created by Greg Barnes in which he unilaterally deems certain cigarettes in violation of RSMo. § 196.1003 without a court order." In the deposition excerpts cited by Plaintiff in support of this statement, Defendant John states that he may have conducted compliance checks at tobacco retailers after July of 2008. Dep. of Robert John at 76:9-12, attached as Exhibit P to Pl.'s Sugg. in Supp. Defendant Marquard states that she had conducted compliance checks after February 22, 2007, but that she does not remember whether those compliance checks occurred in 2008. Dep. of Margaret Marquard at 37:24–38:10, attached as Exhibit D to Pl.'s Sugg. in Supp. The testimony cited by Plaintiff at best supports the proposition that additional compliance checks were conducted after July of 2008.

17

Sugg. in Supp. There is no evidence, however, the Plaintiff has been harmed by this April 2009 website declaration.

The cigarettes seized from Plaintiff in 2006 and 2007 were returned to Plaintiff on December 31, 2008. The returned cigarettes were stale and unusable. They have not been resold and are being held as evidence. The total retail value of the cigarettes seized in 2006 and 2007 was $12,266.79. Defendants have not compensated Plaintiff for the retail value of the cigarettes seized.

## II.     Discussion

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106

18

S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

Plaintiff has sued for a declaratory judgment under Count I and for damages under Count II, all related to the Defendants' alleged violations of its constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Defendants argue that they did not violate Plaintiff's constitutional rights, and that they are entitled to judgment as a matter of law with respect to each of Plaintiff's claims against them.

### A.      Fourth Amendment Seizure Claims

The Fourth Amendment, made applicable to state actors through the Fourteenth Amendment's Due Process Clause, provides in part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. CONST. amend. IV. Plaintiff argues that Defendants violated its right to be free from unreasonable seizures when they seized its cigarettes absent a court order authorizing the seizures. Plaintiff argues that Defendants' only justification for the seizures – Defendants' belief that the cigarettes were contraband subject to seizure under Sections 149.203.2 and 196.1003 of the Revised Statutes of Missouri – was rejected by the Missouri Court of Appeals, and therefore the "Defendants' seizures based on nothing more than Defendant Barnes's unilateral determination that the cigarettes were 'contraband' . . . were unauthorized, unlawful, and violated [Plaintiff's] Fourth and Fourteenth Amendment rights." Pl.'s Sugg. in Supp. at 18.

19

As a general rule, seizures "conducted outside the judicial process, without prior approval by judge or magistrate, [without a warrant] are *per se* unreasonable under the Fourth Amendment-subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (quoting *Thompson v. Louisiana*, 469 U.S. 17, 19-20 (1984) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967))). *See also Dixon v. Lowery*, 302 F.3d 857, 862 (8th Cir. 2002). One such exception is the "plain view" exception, which allows seizures of contraband without a warrant in certain circumstances. Plaintiff argues that the plain view exception is not applicable here because "without the court orders required by RSMo. § 196.1003, Defendants had no valid basis for seizing the cigarettes in the first place." Pl.'s Sugg. in Opp. at 13. However, the plain view exception does not require that an object seized as contraband actually *be* contraband; instead, the exception permits a warrantless seizure where: (1) an officer "does not violate the fourth amendment in reaching the place from which the object can be viewed, [(2)] the object's incriminating character is 'immediately apparent,' and [(3)] 'the officer has a lawful right of access to the object itself.'" *Skokos v. Rhoades*, 440 F.3d 957, 961 (8th Cir. 2006) (quoting *United States v. Collins*, 321 F.3d 691, 694 (8th Cir. 2003), *cert. denied*, 540 U.S. 1076 (2003)).

Plaintiff argues that the plain view exception does not apply in this case for several reasons. Plaintiff first argues that Defendants did not have a lawful right of access as required for the plain view exception to apply, because Defendants "admit that they entered Dirt Cheap's stores and initiated the searches for the same unlawful reason they seized the

20

cigarettes – to confiscate cigarettes that were on Defendant Barnes's contraband list." *Id.* at 16. First, the agents' subjective motivations in entering Plaintiff's stores are irrelevant to the Court's Fourth Amendment analysis. *See Whren v. United States*, 517 U.S. 806, 813 (1996); *New York v. Quarles*, 467 U.S. 649, 655-56 n.6 (1984); *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). *See also Horton v. California*, 496 U.S. 128, 130 (1990) (the discovery of evidence in plain view need not be inadvertent). Plaintiff offers no other argument suggesting that the DOR agents either violated the Fourth Amendment in arriving at the place from which the cigarettes could be plainly viewed or suggesting that the agents did not have a "lawful right of access" to the cigarettes, which were located on Plaintiff's stores' shelves and offered to the public for sale. *See Maryland v. Macon*, 472 U.S. 463, 469 (1985) (respondent had no reasonable expectation of privacy in areas of store where public was invited to enter and transact business) (citing *United States v. Knotts*, 460 U.S. 276, 281-282 (1983)).

Plaintiff next argues that the plain view exception does not apply in this case because it was not "immediately apparent" that the cigarettes were contraband, since the cigarettes were not, in fact, contraband. While Plaintiff's argument is at first blush logically appealing, "immediately apparent," for purposes of the plain view doctrine, "does not really mean what it seems to say." *Skokos*, 440 F.3d at 961. As the Eighth Circuit explained in *Skokos*:

> The plaintiffs would have us require near certainty before a plain-view seizure could occur. But the Supreme Court has rejected that proposition, and in fact has said "that the use of the phrase 'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary."

21

> . . . For an item's incriminating character to be immediately apparent, the
> police merely need probable cause to believe that the item is contraband. . . .
> Once that probable cause exists, a plain view seizure of the item is permissible.

*Id.* (citing and quoting *Texas v. Brown*, 460 U.S. 730, 741 (1983)) (internal citations

omitted). The question, therefore, is not whether the cigarettes were in fact contraband, but

whether the agents had probable cause to believe they were contraband.

*Skokos v. Rhoades*, an Eighth Circuit case dealing with the constitutionality of

seizures of contraband where the items seized were later determined not to be contraband,

is instructive. In *Skokos*, police officers relied on the legal opinion of a county prosecuting

attorney that gaming machines meeting certain criteria were contraband subject to seizure

under Arkansas law – an interpretation of Arkansas law later rejected by the Arkansas

Supreme Court – in seizing gaming machines from the plaintiff. *Id.* 959-961. The Eighth

Circuit held that where the officers relied on the prosecuting attorney's legal opinion, which

had been reasonable when it was offered, and had seen machines meeting the criteria given

them by the prosecuting attorney, their seizures of the machines as contraband were justified

and did not violate the owner's Fourth Amendment rights. *Id.* at 961.

Plaintiff attempts to distinguish *Skokos* on the grounds that in that case there was "no

indication that an applicable statute required a court order finding the machines contraband

before a seizure and forfeiture proceedings could be commenced." Pl.'s Sugg. in Opp. at 16

n.4 (citing *Skokos*, 440 F.3d 957)). While this is true, the Eighth Circuit's reasoning in

*Skokos* applies equally to this case. In *Skokos*, the Eighth Circuit found that the prosecutor's

opinion was reasonable, noting that: (1) the Arkansas Supreme Court had not yet ruled on

22

the precise issue involved in the case; (2) analogous Arkansas Supreme Court cases offered some support for the prosecutor's interpretation of the law, and (3) although the Arkansas Supreme Court ultimately rejected the prosecutor's interpretation of the law, two justices agreed with it in dissent. *Skokos*, 440 F.3d at 960. The question before the Missouri courts in this case appears to have been an issue of first impression; the parties have cited no prior Missouri case interpreting and harmonizing Sections 149.203.2 and 196.1003 of the Revised Statutes of Missouri, and the Court has located none. Defendant Barnes interpreted Section 149.203.2 to allow for seizures of cigarettes whose manufacturers had *violated* Section 196.1003, and interpreted "violated" to require only that a manufacturer had not complied with some provision in Section 196.1003. He did not conclude that a prior court order was required before a "violation" could be found. The state trial court agreed with this construction, finding that Section 196.1003 was limited to the State's remedies against tobacco manufacturers, and did not limit DOR's ability to seize cigarettes deemed contraband. The Missouri Court of Appeals unanimously rejected this finding and held that the seizures were unauthorized. While the two courts reached different conclusions, neither conclusion is unreasonable. This is particularly so because the Missouri Court of Appeal's conclusion required looking at another Missouri statute to reach its conclusion, rather than just the face of the statute in dispute. Defendant Barnes's interpretation of the Missouri statutes was ultimately rejected by the Missouri Court of Appeals. The seizures at issue in this case were not authorized under Missouri law. However, like the prosecutor's opinion in *Skokos*, Defendant Barnes's legal opinion was reasonable when given.

23

Defendants in this case, like the defendant police officers in *Skokos*, had probable cause to believe the cigarettes seized from Plaintiff's stores were contraband. Defendants, including Defendant Barnes, relied on Defendant Barnes's reasonable but ultimately incorrect interpretation of the relevant Missouri.

Defendants are entitled to summary judgment on Plaintiff's claims for a declaration under Count I and for damages under Count II based upon Defendants' alleged violations of its Fourth and Fourteenth Amendment rights to be free from unreasonable seizures.

### B.    Fifth Amendment Takings Claims

The Fifth Amendment's Takings Clause, made applicable to state actors through the Fourteenth Amendment's Due Process Clause, provides that private property may not be taken for public use without just compensation. U.S. CONST. amend. V, cl. 5.

Defendant cites to *Acadia Technology, Inc. v. United States*, 458 F.3d 1327 (Fed. Cir. 2006), for the proposition that where property is seized by state actors pursuant to the State's police power, the property is not seized for "public use" within the meaning of the Takings Clause, and the property's owner is therefore not entitled to "just compensation." Def.'s Mot. at 34. In *Acadia*, the Court of Appeals for the Federal Circuit held that "[w]hen property has been seized pursuant to the criminal laws or subjected to *in rem* forfeiture proceedings, such deprivations are not 'takings' for which the owner is entitled to compensation." 458 F.3d at 1331 (citing *Bennis v. Michigan*, 516 U.S. 442, 452-53 (1996); *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680 (1974); *Van Oster v. Kansas*, 272 U.S. 465, 468 (1926)). The Federal Circuit further held that this rule applied

24

even where the seized property "is ultimately returned to the owner either because the government does not pursue forfeiture proceedings or because the owner prevails in a forfeiture action." *Id.* at 1331-32 (citing *United States v. $7,990.00 in U.S. Currency*, 170 F.3d 843, 845-46 (8th Cir. 1999)) (internal citations omitted).  Defendants also cite to *AmeriSource Corp. v. United States*, 525 F.3d 1149 (Fed. Cir. 2008), another case decided by the Federal Circuit.  In *AmeriSource Corp.*, the Federal Circuit held that in forfeiture cases, "the inquiry remains focused on the character of the government action, not the culpability or innocence of the property holder" and that "as long as the government's exercise of authority was pursuant to some power other than eminent domain . . . the plaintiff has failed to state a claim for compensation under the Fifth Amendment."  525 F.3d at 1154 (citing *Bennis v. Michigan*, 516 U.S. 442, 452-53 (1996)).        Similarly, in *United States v. $7,990.00 in U.S. Currency*, the Eighth Circuit Court of Appeals held that "the forfeiture of contraband is an exercise of the government's police power, not its eminent domain power [and that a] forfeiture is not subject to the Fifth Amendment's Takings Clause when it deprives an innocent owner of his property" and further held that "the government's temporary possession of seized property that is ultimately returned to a forfeiture claimant . . . is not a 'taking' for Fifth Amendment purposes."  170 F.3d at 845 (citing *Bennis v. Michigan*, 516 U.S. 442 (1996); *United States v. One (1) 1979 Cadillac Coupe De Ville*, 833 F.2d 994, 1000-01 (Fed. Cir. 1987)).

Here, the Defendants' actions in seizing Plaintiff's cigarettes clearly were not taken pursuant to the State's power of eminent domain.  The Defendant agents acted to seize items

25

they in good faith believed to be contraband and subject to seizure and forfeiture under Missouri law, an exercise of the State's police power. Plaintiff's Ffifh and Fourteenth Amendment rights were not violated; Defendants are entitled to summary judgment on Plaintiff's claims for a declaration under Count I and for damages under Count II based upon Defendants' alleged Takings Clause violations.

## C. Fourteenth Amendment Due Process Claims

The Fourteenth Amendment protects against the deprivation of a person's property or liberty interests by a state actor without sufficient process. *Clark v. Kansas City Missouri Sch. Dist.*, 375 F.3d 698, 701 (8th Cir. 2004) (citing *Krentz v. Robertson Fire Prot. Dist.*, 228 F.3d 897, 902 (8th Cir. 2000)). Defendants argue that they are entitled to qualified immunity as to Plaintiff's procedural due process claim in Count II because Missouri law afforded Plaintiff sufficient process.[11] "Due process is a flexible concept, requiring only such

---

[11]In Defendants' Suggestions in Support of their Motion for Summary Judgment, the only argument regarding Fourteenth Amendment procedural due process is found in a section dealing with qualified immunity. *See* Defs.' Mot. at 24–26. While Defendants' argument – that qualified immunity applied to procedural due process claims against them because Plaintiff's procedural due process rights were not violated – would logically support their motion for summary judgment on Plaintiff's declaratory judgment claim that its procedural due process rights were violated, the Court recognizes that it may not grant summary judgment on a theory that technically was not raised by Defendants and to which Plaintiff has not had an opportunity to respond. *See Hughes v. Stottlemyre*, 454 F.3d 791, 800 (8th Cir. 2006). However, in this case unlike *Hughes*, Plaintiff responded to Defendants' argument that Plaintiff's procedural due process rights were not violated in a section not limited to the availability of qualified immunity, clearly appreciating that Defendants' intent was not to limit its procedural due process arguments to the issue of qualified immunity. *See* Pl.'s Sugg. in Opp. at 19-22. Further, in their reply suggestions in support of their motion, Defendants, in response to Plaintiff's suggestions in opposition, again argue that there was no procedural due process violation, this time outside of the context of qualified immunity. *See* Defs.' Reply Sugg. at 11-12. The Court is satisfied that Plaintiff has had a fair opportunity to respond to this argument for summary judgment. However,

26

procedural protections as the particular situation demands." *Id.* at 702 (internal citations removed). As a general matter, Plaintiff is correct that due process ordinarily requires "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Marler v. Missouri State Bd. of Optometry*, 102 F.3d 1453, 1456 n.5 (8th Cir. 1996) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)). However, in limited circumstances, "immediate seizure of a property interest, without an opportunity for prior hearing, is constitutionally permissible." *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 678 (1974). *See also United States v. $8,850.00 in U.S. Currency*, 461 U.S. 555, 562 n.12 (1983).

The Supreme Court has recognized that seizure of contraband for the purposes of forfeiture is one of the "'extraordinary situations' that justify postponing notice and opportunity for a hearing." *Calero-Toledo*, 416 U.S. at 677. The Supreme Court in *Calero-Toledo* found that Puerto Rico's statutory scheme, which allowed officials to seize a yacht used to transport illicit drugs without prior notice to the yacht's owners, did not violate the yacht owner's procedural due process rights. *Id.* at 665-67, 679-80. The Supreme Court found in that case that seizure was constitutional even absent pre-seizure notice and a hearing because: (1) the seizure served significant governmental purposes in allowing Puerto Rico to obtain in rem jurisdiction over the seized item in order to conduct forfeiture proceedings;

---

should Plaintiff believe that it has not had a fair opportunity to respond, Plaintiff must so notify the Court in a timely motion for reconsideration in which Plaintiff includes any authority or evidence in support of its position that summary judgment should not be granted on its declaratory judgment claim for procedural due process.

(2) that notice and a hearing prior to seizure might frustrate the government's interest, in that the item to be seized was of a sort that could be easily "removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given,"; and (3) seizure was initiated by government officials – rather than self interested private parties – who determined whether seizure was appropriate based upon the Puerto Rican statutes. *Id.* at 679-80.

Plaintiff argues that Defendants violated its Fourteenth Amendment right to procedural due process when they deprived it of its interest in its property – the seized cigarettes – without sufficient process. Plaintiff argues that the post-seizure forfeiture proceedings instituted by the Director of Revenue did not afford it due process, because "Defendants were statutorily required to obtain a court order finding the manufacturers in violation of their escrow payment requirements and prohibiting the sale of their cigarettes in the state before seizing those cigarettes[.]" Pl.'s Reply Sugg. at 6.

*Caldero-Toledo*'s exception allowing for post-deprivation hearings in the case of seizures of contraband for forfeiture proceedings applies to this case despite the fact that Defendants lacked authority under the Missouri statutes to seize its cigarettes. While Defendants may have lacked authority under Missouri law to conduct the seizures, the question of whether sufficient process was provided to the Plaintiff for the seizures undertaken for the purpose of forfeiture is a question of federal law. *See Martin v. Indiana State Police*, 537 F. Supp. 2d 974, 987-988 (S.D. Ind. 2008) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)). A state official's mere violation of a state law does

Case 2:06-cv-04033-NKL   Document 77   Filed 07/15/09   Page 28 of 32

not, without more, constitute a federal due process violation.  *See Williams v. Nix*, 1 F.3d 712, 717 (8th Cir. 1993).

As noted above, under *Caldero-Toledo*, a post-deprivation hearing is all that is required to satisfy due process where property has been seized by a governmental entity for the purpose of forfeiture.  While Defendants incorrectly interpreted state law in this case, the reasoning of *Caldero-Toledo* is still applicable.  It would make no sense to require a governmental entity to determine in advance what process is due by what the correct outcome of the forfeiture hearing is.  If a constitutional violation occurs each time the government seizes property before a forfeiture hearing and is then found to have incorrectly interpreted the law or applied the facts, it  would substantially limit the ability of the government to conduct forfeiture proceedings  where there might be a difference of opinion about whether the forfeiture was justified.

Sections 149.203.2 and 149.055 of the Revised Statutes of Missouri require that a forfeiture proceeding be filed in the county in which allegedly contraband cigarettes are seized.  The Defendant Director of Revenue instituted forfeiture proceedings shortly after each of the challenged seizures from Plaintiff's stores.  Here, as in *Calero-Toledo*, the property owner was provided an opportunity to vindicate its rights at forfeiture proceedings post-seizure. Defendants' misapplication of Missouri state law alone is insufficient to violate Plaintiff's due process rights, and Plaintiff was provided all the process the property owner received in *Calero-Toledo*.

Further, while Plaintiff is correct that Defendants' seizures were not authorized under Missouri law, the court order Plaintiff complains Defendants should have obtained prior to seizing its cigarettes would have afforded Plaintiff no more process than Plaintiff actually received in this case. The Missouri Court of Appeals in *State ex rel. Vincent v. D.C., Inc.* held that "a court determination of the cigarettes' manufacturer's unremedied violation of the escrow requirements set forth in Section 196.1003(b)(1)" was required before those cigarettes could be seized by the Director pursuant to Section 149.203.2 of the Revised Statutes of Missouri. 265 S.W.3d at 308. However, the required court determination would not involve the Plaintiff but rather the State and the cigarettes' manufacturer.

This is the kind of exceptional case in which a pre-deprivation hearing is not required and in which a post-seizure hearing is constitutionally sufficient. The post-seizure forfeiture proceedings instituted by the Director of Revenue afforded Plaintiff all the process it was due; Defendants are entitled to summary judgment on Plaintiff's claims for a declaration under Count I and for damages under Count II based upon Defendants' alleged violations of its Fourteenth Amendment procedural due process rights.

D.      Attorneys' Fees

Finally, Defendants move for summary judgment with respect to Plaintiff's claim for attorneys fees pursuant to 42 U.S.C. § 1988. Section 1988 provides for reasonable attorneys fees to "prevailing parties" in actions brought pursuant to Section 1983. Defendants argue that because Defendants are entitled to judgment on all of Plaintiff's claims, Plaintiff cannot be a "prevailing party" for purposes of Section 1988 even though it prevailed on its related

30

state-law claim in the Missouri courts. Defs.' Mot. at 35. Plaintiff argues that it is a prevailing party with respect to its state law claims. In *Skokos v. Rhoades*, the Eighth Circuit held that while "a plaintiff who loses on the merits of his federal claims is [ordinarily] not a 'prevailing party' for § 1988 purposes, just because he prevails on a related pendent state-law claim . . . [s]ometimes . . . such a plaintiff can be a prevailing party." 440 F.3d at 962. First, "where a federal court grants relief on a state-law claim to avoid a constitutional issue, it may award attorney's fees if the constitutional claim was 'substantial' and both the constitutional and the state-law claims arose out of a 'common nucleus of operative fact.'" *Id.* (citations omitted). Second, federal courts "may award plaintiffs attorney's fees for state-court proceedings that are essential to their federal claims," such as state law administrative proceedings required for exhaustion under Title VII. *Id.* (citing *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 71 (1980)).

Here, the state proceedings were not a necessary part of the Section 1983 litigation. The Missouri Court of Appeals's resolution of the question of whether Defendants had authority under state law to conduct the seizure did not resolve and was not necessary to the Court's determination of whether Plaintiff's constitutional claims were meritorious. While the Court abstained on the state law issue to try to avoid even considering the constitutional claims, the state court's interpretation of the Missouri law was merely the precursor to resolving the 1983 claims. Plaintiff has prevailed on none of its federal claims, and is not a "prevailing party" entitled to attorneys fees under Section 1988.

Case 2:06-cv-04033-NKL   Document 77   Filed 07/15/09   Page 31 of 32

## III.    Conclusion

Accordingly, it is hereby

ORDERED that Defendants' Motion for Summary Judgment on the Pleadings [Doc. # 70] is GRANTED.  It is further

ORDERED that Plaintiff's Motion for Partial Summary Judgment [Doc. # 71] is DENIED.

 s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  July 15, 2009
Jefferson City, Missouri